UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OMURBEK TOKTOSUNOV,<br><br>               Petitioner,<br>    v.<br><br>CAMILLA WAMSLEY et al.,<br><br>               Respondents. | CASE NO. 2:25-cv-1724-TL<br><br>ORDER ON WRIT OF HABEAS CORPUS |

Petitioner Omurbek Toktosunov, who has been detained at the Northwest ICE Processing Center ("NWIPC") for 16 months, brings a Petition for Writ of Habeas Corpus ("Habeas Petition"), asserting that his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. No. 1. Respondents are Cammilla Wamsley, Field Officer Director of Enforcement and Removal Operations, Seattle Field Office, Immigration Customs Enforcement ("ICE"); Kristi Noem, Secretary, U.S. Department of Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; and Bruce Scott, Warden of NWIPC (collectively, "Respondents"). Respondents filed a response arguing

ORDER ON WRIT OF HABEAS CORPUS – 1

that Petitioner's continued detention without a court-ordered bond hearing does not violate Due Process. Dkt. No. 9. Having considered Petitioner's petition, Respondents' response, Petitioner's traverse (Dkt. No. 12), and the relevant record, the Court GRANTS Petitioner's petition.

## I.    BACKGROUND

Petitioner was born in Kyrgyzstan and is a citizen of Russia. Dkt. No. 3 (Toktosunov Decl.) ¶ 1. He does not have United States citizenship. Dkt. No. 1 ¶ 1. Petitioner fled Russia because he is afraid of being persecuted by the Russian government for his beliefs that Russia is committing war crimes against Ukraine, and for his unwillingness to participate in the war between those two nations. Dkt. No. 3 ¶ 2. These fears appear to derive, in part, from Petitioner's former instances of detainment and interrogation at the hands of Russian officers. *Id*. ¶ 9. Petitioner came to the United States to apply for asylum. Dkt. No. 3 ¶ 2.

On or around July 17, 2024, Petitioner entered the United States without inspection. Dkt. No. 1 ¶ 15. Petitioner was apprehended by border patrol agents on the same day he entered the United State without inspection. Dkt. No. 10 (Soraghan Decl.) ¶ 4. On July 21, 2024, the U.S. Border Patrol issued Petitioner a Notice to Appear ("NTA"), charging Petitioner with being removable under 8 U.S.C. § 1182(a)(6)(A)(i). Dkt. No. 9 at 3. After Petitioner's initial detention hearing, he was transferred to NWIPC, where he has been held for 16 months as of the date of this Order[1]. *Id*.; Dkt. No. 1 ¶ 1.

On September 10, 2024, Petitioner filed a motion for redetermination of his detention-or-release conditions in Tacoma Immigration Court. Dkt. No. 9 at 3. Petitioner then withdrew that motion, and an immigration judge ordered no action. *Id*. Next, on November 13, 2024, Petitioner

---

[1] The Court calculates this time based upon the Parties' briefing. Petitioner's Petition for Writ of Habeas Corpus, in which he states he "has been detained for over thirteen months," was filed on September 8, 2025. Dkt. No. 1 ¶ 1. The Government concedes that at the time it filed its response, Petitioner had been detained for 14 months Dkt. No. 9 at 5.

filed a motion for release, which was denied for lack of jurisdiction after an immigration judge found that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and (2)(a). *Id*. On December 13, 2024, Petitioner filed an application for asylum and for withholding for removal. *Id*. On May 29, 2025, an immigration judge heard the merits of Petitioner's asylum application and, on July 22, 2025, found that Petitioner was removable. *Id.* Nevertheless, the immigration judge granted his application for asylum. *Id*. The immigration judge found that Petitioner's fear of persecution in Russia was well-founded, and that he was thus eligible for asylum under the statute. Dkt. No. 2-1 at 10 (Immigration Judge Decision).

Respondent DHS appealed the immigration judge's order granting asylum, and the Board of Immigration Appeals ("BIA") received it on August 1, 2025. Dkt. No. 9 at 4. Petitioner remains detained pending the appeal; he filed the instant petition on September 8, 2025.

## II. STATUTORY FRAMEWORK AND CASELAW OVERVIEW

Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1) and (2)(a). Dkt. No. 1 ¶ 25; Dkt. No. 9 at 1. Noncitizens are considered "applicants for admission" to the United States when they have not been admitted or arrive in the United States. 8 U.S.C. § 1225(a)(1). "Applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id*. (citing § 1225(b)(1)(A)(i)). The *Jennings* Court found that Section 1225(b)(2) is broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id*.

Typically, noncitizens who fall under Section 1225(b)(1) are "subject to an expedited removal process that does not include a hearing before an [immigration judge] or review of the removal order," but when a noncitizen indicates an intention to apply for asylum, or fear of

prosecution, they must be referred for an interview with an asylum officer. *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111–12 (W.D. Wash. 2019) (quoting 8 U.S.C. §1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d)). If, after the interview with an asylum officer, the officer determines noncitizen's fear is credible, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112. In sum, both §§ 1225(b)(1) and (b)(2) mandate detention of noncitizens for the entirety of the applicable proceedings. *Jennings*, 583 U.S. at 302.

While the detention of noncitizens may be mandated under Section 1225(b), both the Supreme Court as well as the Ninth Circuit have "grappled . . . with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015)[2], *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018) (citation modified). The Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001), held that the Immigration Nationality Act ("INA") does not authorize "indefinite, perhaps permanent, detention," *id.* at 699, of noncitizens subject to final orders of removal under Section 1231(a)(6), instead construing the statute to contain an "implicit 'reasonable time' limitation," *id.* at 682. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized six months as that time limitation. *Id.* at 701. It further found that if a statute were to permit indefinite detention of a noncitizen, that would "raise a serious constitutional problem." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms

//

//

---

[2] This case stems from a class action, in which numerous issues within the claims brought by the petitioners were appealed to the Ninth Circuit. For clarity purposes, the Court will cite these cases throughout the order using a full citation, except when using "id." to refer to an immediately preceding citation.

ORDER ON WRIT OF HABEAS CORPUS – 4

of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." *Id*.

Two years later, in *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court considered a due process challenge to Section 1226(c), which mandates detention during removal proceedings for noncitizens convicted of certain crimes. In holding that the Government could constitutionally detain deportable noncitizens during the limited period necessary for their removal proceedings, the Supreme Court stressed the "brief" nature of mandatory detention under that section which, in the vast majority of cases, was less than about five months. *Id.* at 518–21, 526, 529–30. Justice Kennedy, in his concurring opinion that provided the fifth vote to create the majority, reasoned that a noncitizen could be entitled to "an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified" under the Due Process Clause. *Id.* at 532 (Kennedy, J., concurring) (citation omitted).

Post *Zadvydas* and *Demore,* the Ninth Circuit held that the detention under § 1226(c) of a lawfully admitted resident noncitizen subject to removal for over 32 months was "constitutionally doubtful." *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005). In 2013, the Ninth Circuit concluded that "[b]ecause *Demore's* holding hinged on the brevity of mandatory detention . . . 'prolonged detention of aliens is permissible only where the Attorney General finds such detention individually necessary by providing the alien with an adequate opportunity to contest the necessity of his detention.'" *Rodriguez v. Robbins*, 715 F.3d 1127, 1135 (9th Cir. 2013). Therefore, "under § 1226(a)'s discretionary detention regime, a bond hearing is required before the government may detain an alien for a 'prolonged' period." *Id.*

In 2018 in *Jennings*, the Supreme Court held that Section 1225(b) of the INA—under which Petitioner is detained—"unambiguously authorizes detention pending resolution of

removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings." *Banda*, 385 F. Supp. 3d at 1115 (W.D. Wash. 2019) (citing *Jennings*, 583 U.S. at 297, 303). While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the INA, 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

### III. LEGAL STANDARD

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *See Banda,* 385 F. Supp. 3d at 1106. However, "'[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" *Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116); *see also Rogers v. Ripa*, No. C21-24433, 2022 WL 708493, at *4–5 (S.D. Fla. Jan. 22, 2022), *report and recommendation adopted*, 2022 WL 574389 (Feb. 25, 2022); *Romero Romero v. Wolf*, No. C20-8031, 2021 WL 254435, at *3 (N.D. Cal. Jan. 26, 2021); *Leke v. Hott*, 521 F. Supp. 3d 597, 604–05 (E.D. Va. 2021); *Martinez v. Clark*, No. C18-1669, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019); *Thompson v. Horton*, No. C19-120, 2019 WL 4793170, at *5 n.7 (N.D. Ala. Aug. 26, 2019).

In assessing the constitutionality of prolonged mandatory detention, the court in *Banda* declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because the test does "not resolve the more fundamental issue of whether any procedure—such as a bond

hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07. Rather, the Court in *Banda* conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal."

*Id*. at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Courts in this district have now adopted the "*Banda* test" to assess when detention violates due process. *See, e.g.*, Maliwat, 2025 WL 2256711, at *3–4; Report and Recommendation, *Belqasim v. Hermosillo*, No. C25-1282, (W.D. Wash. Oct. 28, 2025), Dkt. No. 17, *report and recommendation adopted*, 2025 WL 3170929 (Nov. 13, 2025); *Hong v. Mayorkas*, No. C20-01784, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022). The Respondents acknowledge that courts in this District analyze this issue using the *Banda* multi-factor test, and the Court will likewise apply the *Banda* test in determining if Respondents have met their burden of proving that Petitioner's continued detention without a bond hearing is justified.

## IV.  DISCUSSION

A.  *The Banda* Factors

   1.  **Total Length of Detention**

"[T]he most important factor" under the *Banda* test is the length of detention. 385 F. Supp. 3d at 1118. The "context" of a petitioner's circumstances is crucial to keep in mind, particularly that "[t]he detention that is being examined here is the detention of a human being who has never been found to pose a danger to the community or to be likely to flee if released." *Jamal A.*, 358 F. Supp. 3d at 859. "The longer mandatory detention continues . . . the harder it is

to justify." *Murillo-Chavez v. Garland*, No. C22-303, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (Oct. 31, 2022).

As of the time of this order, Petitioner has been detained for 16 months. Dkt. No. 1 ¶ 1; Dkt. No. 9 at 3. Courts in this district have found that similar detention lengths weigh in favor of granting a bond hearing. *See, e.g.*, *Banda*, 385 F. Supp. 3d at 1118–19 (finding that petitioner's length of detention "strongly favors" a bond hearing because "Petitioner has been in detention for approximately 17 months, which is a very long time."); *Cardozo v. Bostock*, No. C25-871, 2025 WL 2592275, at *1 (W.D. Wash. Sept. 8, 2025) (finding petitioner's 12-to-13-month detention favored granting a bond hearing)); *Maliwat*, 2025 WL 2256711, at *2 ("nearly" 12 months); *Rahman v. Garland*, No. C24-2132, 2025 WL 1920341, at *3 (W.D. Wash. June 26, 2025), *report and recommendation adopted sub nom. Anisur R. v. Garland*, , 2025 WL 1919252 (July 11, 2025) ("almost" 12 months); *Ashemuke v. ICE Field Off. Dir.*, No. C23-1592, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024), *report and recommendation adopted*, 2024 WL 1676681 (Apr. 18, 2024) (11 months).

Therefore, the Court finds that the first *Banda* factor weighs in favor of granting a bond hearing.

### 2. Likely Duration of Future Detention

The second *Banda* factor for the Court to consider is the likely duration of future detention. 385 F. Supp. 3d at 1118. Respondents argue that because "[t]he notice of appeal was promptly filed, and the record of the proceeding was sent to the BIA in early August 2025" this reduces the risk any appeal would likely be delayed. Dkt. No. 9 at 5. Regardless of how promptly Respondents filed the notice of appeal, they ignore the reality of the length of time the appellate process can take. BIA appeals take over six months. Dkt. No. 1 at 11; Dkt. No. 2-2 (Maltese Decl. Ex. 2); Dkt. No. 13-1 (Kang Decl. Ex. B) at 4.

Therefore, the Court finds that the second *Banda* factor weighs in favor of granting a bond hearing.

### 3. The Conditions of Detention

Next, the Court considers the third *Banda* factor—the conditions of detention. 385 F. Supp. 3d at 1118. Respondents concede that this factor "likely favors petitioner." Dkt. No. 9 at 9. Petitioner demonstrates that the conditions at NWIPC is that of a prison by asserting that "he is confined in a restrictive setting, where he is permitted to go outside only twice a week, for forty minutes each time." Dkt. No. 3 ¶ 4. Further, he outlines serious concerns regarding lack of access to religious worship and reports of problems with food, medical neglect, and cleanliness. Dkt. No. 1 at 12. Courts in this District have also found that, at this facility, under circumstances similar to that of Petitioner, this factor favors granting a bond hearing. *See, e.g.*, *Diaz Reyes v. Wolf*, No. C20-377, 2020 WL 6820903, at *7 (W.D. Wash. Aug. 7, 2020); *Maliwat*, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025).

Therefore, the Court finds that the third *Banda* factor weighs in favor of granting a bond hearing.

### 4. Delays in Removal Proceedings by Petitioner

Under the fourth *Banda* factor, the Court considers delays in the removal proceedings caused by the petitioner. 385 F. Supp. 3d at 1118. Petitioner asserts that this factor is neutral, as he has not caused any delays in the case. Dkt. No. 1 ¶ 45. Respondents agree that this factor is neutral, despite the fact that Petitioner did not file an asylum application until after five months from when he was detained. Dkt. No. 9 at 6. Respondents assert this while noting *Banda*, where the Court stated that courts should be sensitive to dilatory tactics by a removable noncitizen (385 F. Supp. 3d at 1119). *Id*.

Therefore, the Court finds that the fourth *Banda* factor is neutral.

### 5. Delays in Removal Proceedings by Respondents

Under the fifth *Banda* factor, the Court considers delays in the removal proceedings caused by the Respondents. 385 F. Supp. 3d at 1118. Respondents argue that this factor should favor Respondents because they "promptly filed a notice of appeal." Dkt. No. 9 at 6. Petitioner argues that "[t]here is no basis for treating the absence of government-caused delay *against* the Petitioner, particularly when Respondents assert that the fourth factor—delays attributable to the petitioner—should be "neutral" because [t]here is no evidence that Toktosunov has intentionally caused any delay.'" Dkt. No. 12 at 3. The Court agrees.

Therefore, the Court finds that the fifth *Banda* factor is neutral.

### 6. Likelihood That Removal Proceedings Will Result in a Final Order of Removal

Under, the sixth *Banda* factor, the Court considers the likelihood that removal proceedings will result in a final order of removal. 385 F. Supp. 3d at 1118. Respondents asserts in conclusory fashion that DHS has appealed the decision on specific, non-frivolous grounds. Dkt. No. 9 at 6. Respondents then use that assertion to argue that this factor is neutral because "[t]here is no way to accurately and definitively assess the likelihood that the BIA affirms the immigration judge's grant of asylum." *Id.* Petitioner argues that this factor weighs in favor of granting a bond hearing because not only has he asserted a valid defense, but he has also prevailed before an immigration judge. Dkt. No. 12 at 3. The Court agrees with Petitioner. Although the appeal adds some uncertainty, the fact remains that Petitioner has prevailed before an immigration judge on a prior occasion and, were the shoe on the other foot, the Court is fairly certain that Respondents would then argue that this factor weighs in favor of denying a hearing.

Therefore, the Court finds the sixth *Banda* factor weighs in favor of granting a bond hearing.

***

In sum, four of the six *Banda* factors weigh in favor of granting Petitioner a bond hearing, none weighs in favor of Respondents, and two are neutral. Given the weight of the factors that favor Petitioner, the Court finds that his detention has become unreasonable. In several cases before this District, both the same four factors weighing in favor of petitioner, as well as cases where less factors favor the petitioner, the court has concluded that petitioner's detention had become unreasonable. *See, e.g.* Maliwat, 2025 WL 2256711, at *9 (finding petitioner entitled to a bond hearing when two factors favor petitioner, four factors are neutral, and no factors favor respondent); *Rahman*, WL 1920341, at *5 (finding petitioner entitled to a bond hearing when four factors favor petitioner, two are neutral, and one favors respondent); *Hong*, WL 1078627, at *7 (finding petitioner entitled to a bond hearing when four factors favor petitioner, two factors were neutral, and no factors favored respondents).

**B.   Appropriate Relief**

Having found that Petitioner's detention has become unreasonable, the Court will now address his various requests for relief. Petitioner requests that the Court issue a writ of habeas corpus and order his release unless Respondents hold a custody hearing before an immigration judge within fourteen days. Dkt. 1 at 17. Petitioner also requests that at the hearing, the government be required to establish by clear and convincing evidence that Petitioner presents a risk of flight or danger, and that no alternative to detention could mitigate any risk that his release would present. *Id.* Finally, Petitioner requests that the Court order that if Respondents cannot meet their burden, the immigration judge must order Petitioner's release on appropriate conditions of supervision, taking into account his ability to pay a bond. *Id.*

//

//

### 1. Timing of Bond Hearing

Petitioner requests that a bond hearing be ordered within 14 days of this order. *Id.* Respondents request that, if the Court grants the request for a bond hearing, it be scheduled within 30 days. Dkt. No. 9 at 8. Consistent with the practice of this District, the Court will order the bond hearing to be scheduled within 14 days of this order. *See, e.g.*, *Cardozo*, 2025 WL 2592275, at *2 (rejecting timeline of 35 days ordered by report and recommendation and ordering bond hearing within 14 days); *Maliwat*, 2025 WL 2256711, at *1 (ordering bond hearing within 14 days); *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239, 1263 (W.D. Wash. 2025) (same); *Alvarado v. Clark*, No. C14-1322, 2014 WL 6901766, at *1 (W.D. Wash. Dec. 5, 2014) (same); Report and Recommendation, *Belqasim*, No. C25-1282 (Oct. 28, 2025), Dkt. No. 17, *report and recommendation adopted*, 2025 WL 3170929 (Nov. 13, 2025).

### 2. Standard of Proof at Bond Hearing

At a civil detention hearing, the Government must prove by clear and convincing evidence that the detainee is a risk of flight. *Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (holding "the constitutionally grounded hearing requirements set forth in *Singh* are also applicable [to bond hearings for those detained under §1225(b)]"); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that clear and convincing burden in *Singh* was based on general principles of due process); *Banda*, 385 F. Supp. 3d at 1120. Further, there must be a contemporaneous record of the bond hearing. *Id.* at 1200. When an immigration court determines that a noncitizen is not "a danger to the community and not to be so great a flight risk as to require detention without bond," due process requires a consideration of the noncitizen's financial circumstances regarding ability to afford bail, as well as alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d

976, 1000 (9th Cir. 2017). "A bond determination process that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests." *Id*. at 991; *see also Abduraimov v. Andrews*, No. C25-843, 2025 WL 2912307, at *10 (E.D. Cal. Oct. 14, 2025); *Cantor v. Freden*, 761 F. Supp. 3d 630, 640 (W.D.N.Y. 2025).

### 3. Request for Declaration

Courts in this District and other districts have found that prolonged detention violates due process. The *Banda* factors are used to "determine when detention has become unconstitutionally prolonged" and "if a detainee is entitled to a bond hearing under *Banda*, it is because his continued detention without one—as the text of Section 1225(b) allows—violates due process." *Cardozo*, 2025 WL 2592275, at *1. For the reasons stated in Section IV.A, Petitioner's detention has become prolonged. "When a court issues a writ of habeas corpus, it declares in essence that the petitioner is being held in custody in violation of his constitutional (or other federal) rights." *Harvest v. Castro*, 531 F.3d 737, 741 (9th Cir. 2008). Therefore, the Court declares that Section 1225(b) is unconstitutional as applied to the facts of this case, and that Petitioner's prolonged detention under Section 1225(b) violates the Due Process Clause of the Fifth Amendment.

### 4. Request for Attorney's Fees and Costs

Petitioner should file a fee petition as set forth in the Equal Access to Justice Act, 28 U.S.C. § 2412.

## V.   CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED. Respondents' request that the petition be dismissed (Dkt. No. 9) is DENIED. It is hereby ORDERED:
ORDER ON WRIT OF HABEAS CORPUS – 13

(1) The Government SHALL hold a bond hearing for Petitioner within **fourteen (14)** calendar days of this Order.

(2) Any fee petition SHALL be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Lastly, the Court FINDS that § 1225(b) is unconstitutional as applied to the facts of this case, and that Petitioner's prolonged detention under Section 1225(b) violates the Due Process Clause of the Fifth Amendment.

Dated this 5th day of December, 2025.

Tana Lin
United States District Judge